**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | |
|---|---|
| CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC. d/b/a CAMMS SHELTERS<br>Plaintiff,<br>v.<br>THE UNITED STATES,<br>Defendant,<br>and<br>ALASKA STRUCTURES, INC.,<br>Intervenor. | No. 07-740<br>Judge Baskir |

**INTERVENOR ALASKA STRUCTURES, INC.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND SUPPORTING MEMORANDUM**

November 9, 2007

Robert J. Moss, Counsel of Record
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
MossR@dicksteinshapiro.com (email)

Of Counsel:
Richard J. Conway
Justin A. Chiarodo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ConwayR@dicksteinshapiro.com (e-mail)
ChiarodoJ@dicksteinshapiro.com (e-mail)

Pursuant to RCFC 52.1, Intervenor Alaska Structures, Inc. ("AKS"), by its counsel, respectfully requests that the Court enter judgment in favor of defendant the United States of America and against plaintiff California Industrial Facilities Resources, Inc. d/b/a CAMSS Shelters ("CAMSS") in the above protest.

## STATEMENT OF THE ISSUES

1. Whether the United States Air Force ("Air Force") violated 10 USC § 2319 in its evaluation of CAMSS' quotation, and if so, whether CAMSS was prejudiced by that violation.

2. Whether the Air Fo rce violated 48 CFR §§ 9.202 and 9.206-1 in its evaluation of CAMSS' quotation, and if so, whether CAMSS was prejudiced by that violation.

3. Whether the Air Force violated 10 USC § 2305 by awarding the contract to AKS, and if so, whether CAMSS was prejudiced by that violation.

## STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

Pursuant to RCFC 52.1(b), AKS provides the following statement of relevant facts:

### A. The RFQ

On June 22, 2007, the Air Force issued Solicitation No. FA4452-07-Q-A055 ("RFQ") using the streamlined acquisition procedures applicable to commercial items. AR Tab 2 (RFQ), pp. 10-11. The RFQ stated that the government intended to award a firm-fixed price contract for nine shelters on a brand name or equal basis, with the brand name defined as an "Alaska Extreme 1836 Shelter (tan) including Electrical/Lighting Kits, Plenum, one piece liner, Part No. AK-18EXT-26-2."[1] *Id.* The mandatory salient characteristics for "or equal" products were set forth in the RFQ. *Id.*, pp. 10-11. The relevant mandatory salient characteristics are as follows:

[1] The RFQ contains an inadvertent typographical error in the part number. See AR Tab 19, p. 254. The Air Force intended to identify the brand name item as the Alaska Extreme 1826, Part No. AK-1826-XTR-2, which is the only Alaska Extreme shelter that is 18 feet by 26 feet. *Id.* As discussed below, CAMSS was not prejudiced by the typographical error, and the Court should not sustain the protest on that basis.

1. MAXIMUM WIDTH: 18' 2
2. MAXIMUM LENGTH: 26'
3. THE ONE-PIECE LINER SYSTEM MUST HAVE BEEN TESTED AND APPROVED BY THE USAF IN A U.S. GOVERNMENT TEST FACILITY
4. SHELTER MUST HAVE BEEN SUCCESSFULLY TESTED BY AN INDEPENDENT LABORATORY TO WITHSTAND A 80 MPH SUSTAINED WIND LOAD FOR AT LEAST 30 MINUTES WITH INTERMITTENT 100 MPH WIND GUST (INCLUDE FINAL TEST REPORT WITH BID)
5. SHELTER MUST HAVE BEEN SUCCESSFULLY TESTED BY AN INDEPENDENT LABORATORY TO WITHSTAND A 15 POUND PER SQUARE FOOT SNOW LOAD (INCLUDE FINAL TEST REPORT WITH BID)

AR, Tab 2 (RFQ), pp. 10-11.

The RFQ specifically stated that offerors proposing an "equal" item were required to submit documentation "which demonstrates the items compliance [sic] with the characteristics stated above." AR Tab 2 (RFQ), p. 11. The RFQ stated that award would be made to the "lowest price technically acceptable offeror who meets the requirements." *Id.*

**B. Proposal Evaluation And Contract Award**

The Air Force received two timely quotations in response to the RFQ, one from CAMSS and one from AKS. *See* AR Tab 3 (CAMSS Quotation) and AR Tab 13 (AKS Quotation). AKS submitted a quotation for the specified brand name product at a total quoted price of $183,015. AR Tab 13. CAMMS submitted a quotation for a CAMSS 18EX Shelter System, an "or equal" product, at a total price of $97,410.99. *See* AR Tab 3, p. 18.

There is no evidence that CAMSS filed a GAO or agency-level protest before the date set for submission of quotations, nor in any way objected to the RFQ's requirement that each offeror submit wind and snow load test results. See AR, *generally*. There is also no evidence that CAMSS requested additional time to submit its quotation or to submit test results for its shelters. *Id.* CAMMS' quotation did not include any test results demonstrating that its shelters meet the RFQ's wind and snow load performance requirements, as the RFQ required. See AR Tab 3, *generally*. CAMSS also chose not to submit any engineering data relating to the wind and

snow load capabilities of its shelters. *Id.* CAMSS simply did not address the RFQ's test report requirement at all.[2] *Id.* In short, CAMSS provided no test results or engineering data concerning its wind and snow load capabilities whatsoever. *Id.*

Upon receipt of the quotations, the Air Force conducted a technical evaluation of CAMSS' quotation to determine whether it complied with the requirements of the RFQ. *See* AR Tab 5. After evaluating CAMSS' quotations, the Air Force determined that CAMMS' quotation did not meet four of the RFQ's mandatory salient characteristics:

- CAMSS did not submit a final test report from an independent laboratory verifying that the shelter could withstand an 80 mph sustained wind load for at least 30 minutes, with 100 mph wind gusts.
- CAMSS did not submit a final test report from an independent laboratory verifying that the shelter could withstand a 15 pounds per square foot snow load.
- CAMSS did not submit a test report from a U.S government test facility indicating Air Force approval of the one-piece pull over liner system.
- CAMMS proposed two quick-connect 110 volt outlet strings rather than two 120 volt receptacle lines.

AR Tab 5, p. 83; *see also* AR, Tab 16, pp. 150-51; *compare* AR Tab 2, pp. 10-11 (RFQ salient characteristics) *and* AR Tab 3 (CAMSS' quotation).

The Air Force determined that only AKS offered a product that met the RFQ's requirements. *See* AR Tab 6, p. 86. The Air Force thereafter awarded the contract to AKS.

## ARGUMENT

### A. Legal Standard

A *Rule 52.1* motion calls for a review of whether, given the disputed and undisputed facts, the plaintiff has met its burden to show that a challenged decision was not in accordance with law. *IronClad/IEE v. United States*, 78 Fed. Cl. 351, 356 (2007). The party seeking an injunction bears the burden of proving entitlement to relief, central to which are success on the

[2] CAMSS did submit test reports addressing *the temperature control* capabilities of its shelter, which have nothing to do with wind and snow load capabilities. *See* AR Tab 3, pp. 32-55.

merits and irreparable harm. *Naplesyacht.com, Inc. v. United States*, 60 Fed. Cl. 459, 470 (2004).

The Court reviews an agency's contracting decision in accordance with the standards set forth in the Administrative Procedure Act. *Id.* at 356-7 (*citing Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 19 (2005)). The plaintiff bears the burden of proving the arbitrary and capricious or unlawful nature of the award by a preponderance of the evidence. *Id.* The Court should overturn the challenged decision only if the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of regulation or procedure. *Id.* (*citing Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004)).

If it is determined that a contract was awarded in violation of APA standards, the Court must then evaluate whether the plaintiff, as an unsuccessful bidder, was prejudiced significantly by the government's conduct. *Ironclad/IEE*, *supra* at 357. To prevail in a bid protest, the plaintiff must provide evidence of "'not only a significant error in the procurement process, but also that the error prejudiced it.'" *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (*quoting Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). This requires evidence of a "substantial chance" that the protestor would have received the contract award but for the alleged error or errors. *Id.* at 1331; *see also Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1086 (Fed. Cir. 2001).

### B. The Court Should Enter Judgment For The United States On Count I Of The Complaint Because CAMSS Has Not Proven Any Violation Of The Statute

CAMSS alleges that the Air Force violated 10 U.S.C. § 2319 by denying CAMSS an opportunity to demonstrate that its shelters can meet the RFQ's wind and snow load testing requirements. The evidence in the record is clear that the statute was satisfied, and that there was no violation of law. The statute states:

> A potential offeror may not be denied the opportunity to submit and have considered an offer for a contract solely because the potential offeror (A) is not on a qualified bidders list, qualified manufacturers list, or qualified products list, or (B) has not been identified as meeting a qualification requirement established after October 19, 1984, if the potential offeror can demonstrate to the satisfaction of the contracting officer that the potential offeror or its product meets the standards established for qualification or can meet such standards before the date specified for award of the contract.
>
> ***
>
> The head of an agency need not delay a proposed procurement ... in order to provide a potential offeror with an opportunity to demonstrate its ability to meet the standards specified for qualification.

10 USC § 2319(c).

The Air Force complied fully with the requirements of the statute.[3] CAMSS submitted a quotation, and the Air Force evaluated it. Nothing more was required. *Id.* CAMSS was not denied an opportunity to submit an offer, nor was CAMSS denied an opportunity to have its offer considered. The evidence is thus clear that the Air Force complied fully with the statute in its evaluation of CAMSS' quotation and that there was no violation of statute.

CAMSS appears to misunderstand the requirements of the statute. CAMSS appears to believe that the Air Force was required not only to evaluate its quotation, which the Air Force clearly did, but also that the Air Force was somehow precluded from rejecting CAMSS' non-compliant quotation. CAMSS' reading of the statute is incorrect, however, because the statute quite plainly states that the Air Force need only consider CAMSS' proposal to satisfy its requirements. The Air Force evaluated CAMSS' proposal on its merits. *See* AR Tab 5. Nowhere does the statute preclude the Air Force to rejecting CAMSS' quotation. The Air Force, having evaluated CAMSS' quotation and having determined -- correctly -- that it did not comply

[3] It is also important to note that the statute does not apply here at all inasmuch as the RFQ's testing requirements are not qualification requirements under the statute. The testing requirements were salient characteristics applicable only to this specific procurement, and accordingly were not qualification requirements.

with the RFQ's requirements, was free to reject CAMSS' quotation, which it did. There was no violation of law.

The statute states that a "potential offeror" may not be denied an opportunity to compete if it can demonstrate "to the satisfaction of the contracting officer" that it can meet the testing standard. CAMSS has known since the RFQ was issued that the Air Force required such testing, and yet CAMSS never had testing performed on its shelters. Moreover, CAMSS did not object to the RFQ's testing requirement; CAMSS never requested an opportunity to submit test results or other data; and CAMSS chose not to submit engineering data or other evidence with its quotation to demonstrate that it could meet the testing requirement. CAMSS submitted no relevant information at all, no engineering data, no test reports, nothing to support its assertion that it can meet the wind and snow load requirements. The Contracting Officer properly found that CAMSS' quotation did not satisfy the RFQ's requirements, and therefore properly rejected CAMSS' non-compliant quotation.

CAMSS also alleges that the Air Force violated the statute by failing to prepare a written justification, as required by the statute. See 10 USC § 2319(b). The statute is clear, however, that the agency need not delay a proposed procurement in order to comply with these requirements. 10 USC § 2319(c)(5). Given the urgency of the Air Force's requirement for these shelters, the statute did not in fact require the Air Force to execute a written justification before acquiring the shelters, as CAMSS asserts.

Moreover, to prevail on this point, CAMSS must demonstrate that it was prejudiced by the alleged error. *Ironclad/IEE*, *supra* at 357. This requires evidence of a "substantial chance" that the protestor would have received the contract award but for the alleged error or errors. *Galen Med. Assocs.*, *supra* at 1331. There is no evidence at all that CAMSS was prejudiced by the Air Force's failure to execute a written justification. Even if the Air Force had

executed a written justification, how would CAMSS' position be different? CAMSS did not rely in any way on the agency's actions in this regard, and there is no evidence that CAMSS would have received the contract but for that alleged error. The Court should accordingly enter judgment for the United States on Count I of the Complaint.

**C. The Court Should Enter Judgment For The United States On Count II Of The Complaint Because CAMSS Has Not Proven Any Violation Of Regulation**

CAMSS alleges that the Air Force violated 48 CFR 9.202 (FAR 9.202) by denying CAMSS an opportunity to demonstrate that its shelters can meet the RFQ's wind and snow load testing requirements. Again, the evidence shows that the Air Force complied with the regulation, and that CAMSS was no prejudiced by any potential violation of that provision.

The requirements of FAR 9.202 are essentially identical to the requirements of the statute. FAR 9.202 states that a potential offeror may not be denied an opportunity to "submit and have considered" its proposal if it "can demonstrate to the satisfaction of the contracting officer" that it can meet the requirements. As discussed above, CAMSS did in fact submit a quotation, and the Air Force id in fact evaluate it. The Air Force, having evaluated CAMSS' quotation and having determined correctly that it did not comply with the RFQ's mandatory requirements, was perfectly free to reject CAMSS' quotation, which it did. The FAR was therefore satisfied.

CAMSS also alleges that the Air Force violated the FAR by failing to prepare a written justification for the alleged qualification requirement. Again, CAMSS must demonstrate that it was prejudiced by that alleged error. *Ironclad/IEE*, *supra* at 357. There is no evidence at all that CAMSS was prejudiced by the Air Force's failure to execute a written justification. Even if the Air Force had executed a written justification, CAMSS' position would not be any different. CAMSS did not rely in any way on the agency's actions in this regard, and there is no

evidence that CAMSS would have received the contract but for that alleged error. The Court should accordingly enter judgment for the United States on Count II of the Complaint.

CAMSS also alleges that the Air Force violated FAR 9.206-1 by enforcing the test requirements without executing a written justification. CAMSS' reliance on FAR 9.206-1 is misplaced because that FAR provision only applies to Qualified Bidders Lists (QBLs), Qualified Products Lists (QPLs), and Qualified Manufacturers Lists (QMLs), and the RFQ's test report requirement is certainly not a QBL, QPL, or QML. FAR 9.206-1. A QBL is a "list of bidders who have had their products examined and tested and who have satisfied all applicable qualification requirement for that product, or have otherwise satisfied all applicable qualification requirements." FAR 9.201. A QML is a list of manufacturers who have had their products examined and tested. *Id.* A QPL is a list of products that have been examined, tested, and have satisfied all applicable qualification requirements. FAR 2.101.

The RFQ does not require that any bidder, manufacturer or product be included on any list before contract award. In fact, there is quite simply no bidder, manufacturer, or product list of any kind applicable to this procurement at all. The RFQ only requires that an offeror proposing a shelter on an "or equal" basis submit a test report verifying its product's compliance with the wind and snow load requirements, but does not require that the shelter be included on any kind of list. Because there is no requirement that any bidder, manufacturer or product be included on any list, and because a QBL, QPL, and QML are all defined as types of lists, it is clear that there is no QBL, QPL, or QML requirement applicable to this procurement. Because FAR 9.206-1 only applies to QBLs, QPLs, and QMLs, CAMSS' reliance on FAR 9.206-1 is without merit, and there was no violation of regulation. The Court should accordingly enter judgment for the United States and against CAMSS on Count II of the Complaint.

**D. The Court Should Enter Judgment For The United States On Counts III And IV Of The Complaint**

In a last-ditch measure, CAMSS alleges that the Air Force violated the Competition in Contracting Act (CICA), 10 USC § 2305, by awarding the contract to AKS. CAMSS' asserts that it was unlawful to award the contract to AKS because AKS did not propose the brand-name shelters, and because the shelters AKS proposed do not meet the RFQ's salient characteristics. CAMSS is wrong on both points.

The Air Force has conceded that there was an inadvertent typographical error in the description of the brand name product identified in the RFQ. The RFQ identified the shelter as an Alaska Extreme 1836, when in fact the correct shelter is the Alaska Extreme 1826. The RFQ identified the dimensions of the shelter as 18 by 26, which are the dimensions of the Alaska Extreme 1826. Moreover, AKS does not make a shelter called an Alaska Extreme 1836. The 1826 is the shelter the Air Force required, and that is the shelter that AKS offered and delivered. The Air Force received precisely the shelters it required, and did not waive any requirement in the RFQ.

Although it is clear that the Air Force erred by specifying the Alaska Extreme 1836 rather than Alaska Extreme 1826, it is equally clear that CAMSS suffered no prejudice by that error. CAMSS did not rely in any way on the RFQ's erroneous 1836 designation, and would not have done anything differently had the Air Force corrected its error. CAMSS offered its 18 by 26 shelter, which is the same size shelter AKS offered, and the same size shelter the Air Force required. CAMSS did not, however, submit test results, as the RFQ required, and therefore was properly rejected. There is simply no prejudice to CAMSS, and this ground of protest should be denied. The Court should accordingly enter judgment for the United States and against CAMSS on Counts III and IV of the Complaint.

### E. The Contract Has Been Performed

The contract here at issue has been fully performed. Therefore, even if the Court were to grant CAMSS' protest, there is no remaining performance for the Court to enjoin. Any relief to which CAMSS may be entitled is thus limited to its quotation preparation costs and protest costs.

## CONCLUSION

For these reasons, the Court should enter judgment for the United States and against CAMSS on all counts of the complaint, and should deny CAMSS' request for injunctive relief.

Dated: November 9, 2007

Respectfully submitted,

By: ______________________

Robert J. Moss
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
MossR@dicksteinshapiro.com (email)

*Counsel of Record for Alaska Structures, Inc.*

Of Counsel:
Richard J. Conway
Justin A. Chiarodo
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200 (telephone)
(202) 420-2201 (facsimile)
ConwayR@dicksteinshapiro.com (e-mail)
ChiarodoJ@dicksteinshapiro.com (e-mail)