# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC. D/B/A CAMSS SHELTERS, | ) | |
| Plaintiff, | ) | No. 07-740C |
| v. | ) | |
| | ) | (Judge Baskir) |
| THE UNITED STATES, | ) | |
| | ) | **REDACTED VERSION** |
| Defendant, | ) | |
| and | ) | |
| ALASKA STRUCTURES, INC., | ) | |
| Intervenor. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Dept. of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 305-3689
Fax. (202) 305-7643

OF COUNSEL:

Christy J. Kisner, Capt., USAF
Department of the Air Force
1501 Wilson Blvd.
Arlington, VA 22209

November 9, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

Page

Statement Of The Issues....................................................................2

Statement Of The Case.....................................................................2

I. Nature Of The Case.........................................................2

II. Course Of Proceedings Below...........................................3

III. Statement Of The Facts....................................................4

Argument.........................................................................................4

I. Standard Of Review.........................................................4

II. This Court Lacks Subject Matter Jurisdiction To Entertain CAMSS's Requests To Enjoin Performance Of The Contract And To Re-Solicit The Contract Because Those Requests Are Moot.....................................6

III. CAMSS Does Not Have Standing To Protest The Contract Award.....................................................................8

IV. The Decision Of The Air Force To Award The Contract To ASI Was Not Arbitrary, Capricious, An Abuse Of Discretion, Or Otherwise Contrary To The Law.......................14

A. Contrary To CAMSS's Assertions, The Solicitation Contained No Qualification Requirements Under Section 2319 Of Title 10 To The United States Code....14

B. Even If The Solicitation Contained Qualification Requirements, The Air Force Did Not Violate Any Applicable Statutes Or Regulations...............................20

C. The Air Force Properly Awarded The Contract To ASI, Who Offered The Brand Name Product.................23

D. Even If The Air Force's Actions Were Contrary To Statutes And Regulations, As CAMSS Alleges, CAMSS's Inability To Show Prejudice As A Result Of The Alleged Errors Is Fatal To Its Protest.......................27

V. CAMSS's Challenges To The Terms Of The Solicitation Are Untimely.......................................................................29

VI. CAMSS Fails To Satisfy Its Heavy Burden To Obtain An Injunction......................................................................30

A. CAMSS Is Not Likely To Succeed Upon The Merits...................................................................31

B. CAMSS Will Not Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted...................32

C. The Harm To The Government Outweighs Any Potential Harm to CAMSS If An Injunction Is Issued.................................................................33

D. A Preliminary Injunction Would Not Be In The Public's Interest..................................................35

Conclusion..................................................................................36

# TABLE OF AUTHORITIES

Cases Page

Advanced Data Concepts, Inc. v. United States,
316 F.3d 1054 (Fed. Cir. 2000)....................................................4

Al Ghanim Combined Group Co. Gen. Trad. & Cont. v. United States,
56 Fed. Cl. 502 (2003)..............................................................5

Alfa Laval Separation, Inc. v. United States,
175 F.3d 1365 (Fed. Cir. 1999)..................................................10

Am. Fed'n of Gov't Employees v. United States,
258 F.3d 1294 (Fed. Cir. 2001)....................................................9

Am. Renovation & Construction Co. v. United States,
45 Fed. Cl. 44 (1999)...........................................................13, 28

Banknote Corp. of Am., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004)................................................4, 5

Bannum, Inc. v. United States,
60 Fed. Cl. 718 (2004)..............................................................31

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000)..............................................................30

Blue & Goldfleet, L.P. v. United States,
492 F.3d 1308 (Fed. Cir. 2007)............................................29, 30

CACI, Inc.-Fed v. United States,
719 F.2d 1567 (Fed. Cir. 1983)..............................................6, 30

CCL Serv. Corp. v. United States,
48 Fed. Cl. 113 (2000)..............................................................30

Chant Engineering, Co., Inc. v. United States,
75 Fed. Cl. 62 (2007)....................................................................27

Chapman Law Firm Co. v. United States,
67 Fed. Cl. 188 (2005)..........................................................33, 34

CHE Consulting, Inc. v. United States,
47 Fed. Cl. 331 (2000)..................................................................10

Dan Caputo Co. v. Russian River County Sanitation District,
749 F.2d 571 (9th Cir. 1984)............................................................7

Data General Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996)........................................................10

Dismas Charities, Inc. v. United States,
75 Fed. Cl. 59 (2007)....................................................................13

Fire-trol Holdings, LLC v. United States,
68 Fed. Cl. 281 (2005)....................................................................5

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993)..........................................................31

Forestry Surveys and Data v. United States,
44 Fed. Cl. 485 (1999)....................................................................7

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001).......................................................4

Information Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003).......................................................9

Ironclad/EEI v. United States,
78 Fed. Cl. 351 (2007)..................................................................13

James Luterbach Constr. Co. v. Adamkus,
781 F.2d 599 (7th Cir. 1986)...........................................................7

Manufacturers Hanover Trust Co. v. United States,
590 F.2d 893 (Ct. Cl. 1978)....................................................................7

Mass. Bay Transp. Authority v. United States,
21 Cl. Ct. 252 (1990)...............................................................................6

Myers Investigative & Sec. Serv., Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002)..........................................................9, 10

North Carolina v. Rice,
404 U.S. 244 (1971).................................................................................6

Orca Northwest Real Estate Servs. v. United States,
65 Fed. Cl. 1 (2005)................................................................................28

Owen of Georgia, Inc. v. Shelby County,
648 F.2d 1084 (6th Cir. 1981)...................................................................7

PGBA, L.L.C. v. United States,
57 Fed. Cl. 655 (2003)............................................................................30

Ravens Group v. United States,
78 Fed. Cl. 390 (2007).........................................................................4, 27

San Diego Beverage & Kup v. United States,
997 F.Supp. 1343 (S.D. Cal. 1998)....................................................33, 34

Scott v. United States,
78 Fed. Cl. 151 (2007)............................................................................12

Statistica, Inc. v. Christopher,
102 F.3d 1577 (Fed. Cir. 1996)...................................................................5

Tech. & Applications Corp. v. United States,
316 F.3d 1312 (Fed. Cir. 2003)................................................................10

United States v. IBM Corp.
892 F.2d 1006 (Fed. Cir. 1989)................................................................10

W.G. Yates & Sons Constr. Co., Inc. v. Caldera,
192 F.3d 987 (Fed. Cir. 1999)....................................................passim

GAO Decisions

Aydin Corp.-Reconsideration,
B-224185, 87-1 CPD ¶ 141 (Feb. 10, 1987)...............................16, 19

Scot, Inc.,
B-292580, 2003 CPD ¶ 173 (Oct. 3, 2003)................................16, 17

Statutes

10 U.S.C. § 2305..........................................................................passim

10 U.S.C. § 2319..........................................................................passim

Regulations

48 C.F.R. § 9.202...........................................................................15, 32

48 C.F.R. § 9.206-1.......................................................................15, 32

48 C.F.R. § 11.104.........................................................................15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CALIFORNIA INDUSTRIAL<br>FACILITIES RESOURCES, INC.<br>dba CAMSS SHELTERS,<br><br>Plaintiff,<br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br>v.<br><br>ALASKA STRUCTURES,INC.,<br><br>Intervenor. | ) | No. 07-740<br>(Judge Lawrence M. Baskir) |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON THE ADMINISTRATIVE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Rules 52.1 and 65 of the Rules of the United States Court of Federal Claims and the Court's October 31, 2007 order, defendant, the United States, respectfully requests that the Court enter judgment in favor of the United States with respect to plaintiff's complaint, and deny plaintiff's motion for a preliminary injunction, upon the grounds that defendant is entitled to judgment as a matter of law based upon the administrative record. In support of this motion, we rely upon the complaint, plaintiff's motion, the administrative record, and the following memorandum of law.

## STATEMENT OF THE ISSUES

1. Whether this Court lacks subject matter jurisdiction to entertain the claims of California Industrial Facilities Resources, Inc. ("CAMSS"), because those claims are now moot.

2. Whether plaintiff lacks standing to protest the award of the contract at issue.

3. Whether the decision of the Department of the Air Force ("Air Force") to award the contract to Alaska Structures, Inc. ("ASI"), was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

4. Whether plaintiff's challenges to the terms of the solicitation are untimely.

5. Whether a preliminary injunction should be issued staying performance of the contract, which has substantially been completed.

## STATEMENT OF THE CASE

### I. Nature Of The Case

CAMSS protests the award of a purchase order to ASI by the Air Force pursuant to a request for quotation, RFQ No. FA4452-07-Q-A055, for a firm, fixed-price contract to procure nine shelters. AR 130. The

shelters were solicited as brand name or equal with a detailed list of 28 salient characteristics that must be met in order for the product to be considered compliant. AR 10-11. CAMSS argues that three of the salient characteristics were "qualification requirements" under 10 U.S.C. § 2319, which the Air Force could not enforce against CAMSS. Compl. 10-11. CAMSS further argues that, as a result of a typographical error in identifying the brand name in the solicitation, ASI did not offer the brand name product, and ASI's bid should have been evaluated against the salient characteristics. Id. at 13-14. CAMSS seeks to enjoin further performance of the award to ASI, re-solicitation of the contract, and any other relief that the Court deems appropriate. Id. at 15-16.

II. Course Of Proceedings Below

The Air Force issued an order for shelters on July 2, 2007. AR 88. On July 12, 2007, CAMSS filed a bid protest of the award with the Government Accountability Office ("GAO"). AR 154. The GAO denied CAMSS's protest on October 19, 2007. AR 136. CAMSS filed a bid protest and motions for a temporary restraining order and a preliminary injunction in this Court on October 23, 2007. This Court denied CAMSS's motion for a temporary restraining order on October 26, 2007.

III. Statement Of The Facts

In accordance with paragraphs 9 and 10 of the Court's Special Procedures Order issued on October 24, 2007, defendant references its statements of fact and objections to the Consolidated Statement of Uncontroverted Facts, which will be jointly filed by the parties on December 10, 2007.

## ARGUMENT

I. Standard Of Review

This Court may set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004) (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054 (Fed. Cir. 2000)); see also Ravens Group v. United States, 78 Fed. Cl. 390, 396 (2007). Specifically, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Banknote, 365 F.3d at 1352 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (Fed. Cir. 2001)).

When a challenge is brought upon the grounds that the agency's decision lacked a rational basis, the Court must "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Id. When a challenge is brought upon the grounds that a procurement involved a violation of regulation or procedure, the protestor "must show a clear and prejudicial violation of applicable statutes or regulations." Id.; see also Fire-trol Holdings, LLC v. United States, 68 Fed. Cl. 281, 284 (2005). To establish prejudice, "a protestor must show that there was a 'substantial chance' it would have received the contract award absent the alleged error." Banknote, 365 F.3d at 1352; see also Statistica, Inc. v. Christopher, 102 F.3d 1577 (Fed. Cir. 1996) ("A protestor must show not simply a significant error in the procurement process, but also that the error was prejudicial, if it is to prevail in a bid protest.").

Moreover, "[a] protestor has the burden of proving by a preponderance of the evidence the arbitrary and capricious nature of the Government's actions or the violation of an applicable procurement regulation." Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 507 (2003). If the protestor satisfies this heavy burden, this Court may award equitable relief. Id. However,

"injunctive relief sought by a frustrated offeror is appropriate 'only in extremely limited circumstances.'" Id. (quoting CACI, Inc.-Fed v. United States, 719 F.2d 1567 (Fed. Cir. 1983) (internal citations omitted)).

## II. This Court Lacks Subject Matter Jurisdiction To Entertain CAMSS's Requests To Enjoin Performance Of The Contract And To Re-Solicit The Contract Because Those Requests Are Moot

CAMSS asks this Court to enjoin further performance of the contract and to re-solicit the contract. Compl. 15-16. In light of ASI's delivery of all nine shelters ordered by the Air Force, and the Air Force's acceptance of those shelters, CAMSS's request is moot, and the Court lacks jurisdiction to grant the relief sought. See Limbrick Decl. 6.

Generally, Article III courts possess jurisdiction to entertain only actual controversies and questions that affect the rights of parties with adverse legal interests. Mootness is a jurisdictional question because the courts are not empowered to decide moot questions. North Carolina v. Rice, 404 U.S. 244, 246 (1971). Although this Court was established under Article I of the Constitution, it has consistently applied prudential considerations to restrict its jurisdiction to the limits defined by the Article III case and controversy requirement. Massachusetts Bay Transp. Authority v. United States, 21 Cl. Ct. 252, 257-58 (1990). Moreover, this Court is

without power to decide hypothetical, premature, or moot claims. Manufacturers Hanover Trust Co. v. United States, 590 F.2d 893 (Ct. Cl. 1978).

Accordingly, where the requested relief is no longer possible because performance of the challenged contract has been completed, the protest is moot, and this Court lacks jurisdiction to entertain it. See Forestry Surveys and Data v. United States, 44 Fed. Cl. 485, 491-92 (1999) (dismissing claim for injunctive relief where contract performance was "substantially complete") (citing James Luterbach Constr. Co. v. Adamkus, 781 F.2d 599, 602 (7th Cir. 1986) (vacating grant of summary judgment against protester where construction of wastewater treatment plan was substantially complete when district court entered judgment; case remanded with direction to dismiss as moot); Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084, 1094 (6th Cir. 1981) (dismissing claims for injunctive relief as moot where construction of county criminal justice center was substantially complete); Dan Caputo Co. v. Russian River County Sanitation District, 749 F.2d 571, 574 (9th Cir. 1984) (directing district court to dismiss protest as moot where contracts were complete, holding that "[t]here remains no effective relief which we can offer")). In

this case, all nine shelters have been inspected, accepted, and delivered to the Air Force, and the Air Force has authorized payment for those units. Limbrick Decl. 6. On October 26, 2007, a total of nine Alaska Extreme Shelters were received at Travis Air Force Base in California and McGuire Air Force Base and Fort Dix in New Jersey. Id. Six shelters are being used by Expeditionary Mobility Task Forces units that provide direct combat support and may be deployed at any time with 24 hours' notice. Id. Lack of these shelters affects the ability of these units to be readiness-prepared to assist the units that are currently deployed in the field. Id. Three Alaska Extreme Shelters are being used by a unit that trains warfighters at the Air Force Expeditionary Center at Fort Dix. Id. Accordingly, all nine shelters are currently being used for the war effort, and the contract is substantially complete. Id. CAMSS's requests that the Court enjoin further performance of the contract and order the contract re-solicited are now moot. Accordingly, the Court should dismiss this aspect of CAMSS's complaint for lack of jurisdiction.

III. CAMSS Does Not Have Standing To Protest The Contract Award

A party invoking Federal jurisdiction bears the initial burden of proving that standing was present at the time the suit was brought. Myers

Investigative & Sec. Serv., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002). In the context of a bid protest, the requirement of standing is satisfied only if the protestor is an "interested party." Id. The United States Court of Appeals for the Federal Circuit, in defining the term "interested party," has adopted a definition utilized by the Comptroller General in connection with its bid protest jurisdiction. Myers, 275 F.3d at 1370. As the Federal Circuit has held, in bid protests under the Tucker Act, "we ... construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." Id. (quoting Am. Fed'n of Gov't Employees v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001)). Moreover, "because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits." Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Direct economic interest is deemed to be affected only where the protestor establishes that it had a substantial chance of securing the award

absent a prejudicial defect in the process. Myers, 275 F.3d at 1369-70. "Substantial chance" means that the protestor was in the "zone of active consideration." Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999). To establish standing, a protestor must demonstrate "more than a mere possibility that [it] would have received the contract but for the error in the procurement process." Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). A protestor, however, does not need to show that, but for the alleged error, it would have received the contract. Id. Rather, a protestor must show that its chance of winning the award was not insubstantial. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Accordingly, a protestor is not an interested party and, therefore, lacks standing to protest where it was incapable of receiving the award at issue or its bid is otherwise nonresponsive. See United States v. IBM Corp., 892 F.2d 1006, 1012 (Fed. Cir. 1989); CHE Consulting, Inc. v. United States, 47 Fed. Cl. 331, 337 (2000).

In this case, even if the Court were to agree with CAMSS's challenges to the solicitation, CAMSS's proposal still failed to meet one important technical requirement of the solicitation, which rendered CAMSS

incapable of receiving the contract in this case. The contracting officer concluded that CAMSS's proposal failed to meet the following four salient characteristics required by the solicitation to be an "or equal" product:

> (12) One-piece liner system must have been tested and approved by the USAF in a U.S. Government Test Facility
>
> (18) 120V Receptacle lines with 3 molded tri-plex outlets
>
> (27) Shelter must have been successfully tested by an independent laboratory to withstand a[n] 80 MPH sustained wind load for at least 30 minutes with intermittent 100 mph wind gust (include final test report with bid)
>
> (28) Shelter must have been successfully tested by an independent laboratory to withstand a 15 pound per square foot snow load (include final test report with bid)

AR 11, 91. CAMSS argues that salient characteristics (12), (27), and (28) were unlawful. Compl. 10-11. Even if this were the case, which it is not, CAMSS's proposal still remains technically unacceptable because it proposed two quick connect 110-volt/20amp outlet strings, when the solicitation required a 120-volt receptacle. AR 11,17.

The purpose for the 120-volt requirement was to prevent a mechanical phenomenon called wet stacking. AR 258. Wet stacking

occurs when a diesel engine or generator is underutilized. Levie Decl. 2. A generator needs to be working with a load of at least 60 to 75 percent of its full output or else pressure will build up in the engine, causing extreme resistance, and eventually causing failure of the engine years before its time. Id. To avoid this problem, one must have specific load requirements, and those load requirements must ensure that the engine has enough of a load put on it to meet that 60 to 75 percent requirement. Id. The solicitation in this case required a 120-volt tent coupling and support equipment to ensure that the engine would not be underutilized. Id. Therefore, when the Government stated that its equipment needs 120 volt, that is exactly what was needed. Id. Anything other than 120 volt, like the 110 volt offered in CAMSS's proposal, is "dangerous, damages equipment and can cause serious bodily injury." Id. According to the contracting officer, Mr. Limbrick, any voltage other than 120 volt "would create a safety hazard." AR 258.

In Scott v. United States, 78 Fed. Cl. 151 (2007), this Court dismissed a protest for lack of standing where the protestor would have been unable to perform the remaining requirements of the contract even if the allegedly illegal sections of the solicitation had been removed. Id. This

Court held that the protestor did not qualify as an interested party with standing because "he [did] not establish a substantial chance of award, and thus, does not show a direct economic interest in the award or failure to award the contract." Id.

Similarly, in Dismas Charities, Inc. v. United States, 75 Fed. Cl. 59 (2007), this Court dismissed a protest for lack of standing where the protestor had submitted a non-compliant proposal, and, in Ironclad/EEI v. United States, 78 Fed. Cl. 351 (2007), this Court dismissed a protest for lack of standing where the agency's alleged errors in conducting the procurement did not prejudice the protestor.

In this case, CAMSS's was not prejudiced by the alleged errors in the solicitation. CAMSS had no chance of winning the contract because it submitted a nonresponsive proposal. The solicitation required "120V Receptacle Lines With 3 Molded Tri-Plex Outlets." AR 11. CAMSS proposed a shelter with "Two (2) quick connect 110v/20amp outlet strings with 3 molded tri-plex outlets." AR 17. This did not conform with a technical requirement of the solicitation and was unacceptable to the contracting officer. AR 91, 258; see Am. Renovation & Construction Co. v. United States, 45 Fed. Cl. 44, 49 (1999) ("A Contracting Officer's decision

to reject materials as not compliant with specifications will be upheld unless it was arbitrary and capricious. . . . Procurement officials are familiar with the particular conditions under which equipment has to be used and are in the best position to know the government's actual needs.").

Accordingly, because CAMSS cannot demonstrate that it is an interested party, its protest should be dismissed for lack of standing.

## IV. The Decision Of The Air Force To Award The Contract To ASI Was Not Arbitrary, Capricious, An Abuse Of Discretion, Or Otherwise Contrary To The Law

### A. Contrary To CAMSS's Assertions, The Solicitation Contained No Qualification Requirements Under Section 2319 of Title 10 to the United States Code

CAMSS argues that certain terms of the solicitation were prohibited by law, and that ASI's proposal was not held to the terms of the solicitation. Compl. 10-15. Assuming that this Court possesses jurisdiction to entertain CAMSS's claims, this Court should enter judgment upon the administrative record as a matter of law for the United States.

The solicitation in this case sought a brand name or equal Alaska Extreme Shelter. AR 9. A solicitation for a brand name or equal product must include, "in addition to the brand name, a general description of those salient physical, functional, or performance characteristics of the brand

name item that an 'equal' item must meet to be acceptable for award." 48 C.F.R. § 11.104. In this case, the solicitation provided a list of 28 salient characteristics that had to be met to be considered an "or equal" product. AR 10-11, 131.

Section 2319 of Title 10 of the United States Code, entitled "Encouragement of New Competitors," and its related regulations, 48 C.F.R. 9.206-1 and 48 C.F.R. 9.202, require agencies to complete a number of procedures before establishing a qualification requirement. The statute defines "qualification requirement" as "a requirement for testing or other quality assurance demonstration that must be completed by an offeror before award of a contract." 10 U.S.C. § 2319. The statute provides that:

> [a] potential offeror may not be denied the opportunity to submit and have considered an offer for a contract solely because the potential offeror (A) is not on a qualified bidders list, qualified manufacturers list, or qualified products list, or (B) has not been identified as meeting a qualification requirement established after October 19, 1984, **if** the potential offeror can demonstrate to the satisfaction of the contracting officer . . . that the potential offeror or its product meets the standards established for qualification or can meet such standards before the date specified for award of the contract.

10 U.S.C. § 2319(c)(3) (emphasis added). The purpose of 10 U.S.C. § 2319 is to ensure that agencies only use qualification requirements when and to the extent necessary to ensure product quality, reliability, and maintainability, rather than inappropriately to restrict competition. W.G. Yates & Sons Constr. Co., Inc. v. Caldera, 192 F.3d 987, 992-93 (Fed. Cir. 1999).

The GAO examined the scope of 10 U.S.C. § 2319 in Aydin Corp.-Reconsideration, B-224185, 87-1 CPD ¶ 141 (Feb. 10, 1987). In that case, the GAO held that a qualification requirement "was not intended to apply to any individual specification of any one solicitation." Id. Rather, the GAO explained that 10 U.S.C. § 2319 "only applies where the agency establishes a systematized quality assurance demonstration requirement on a continuing basis as an eligibility for award, such as a qualified products list, qualified manufacturers list, or qualified bidders list." Id. (emphasis added). The GAO reached the same conclusion in a later decision, Scot, Inc., B-292580, 2003 CPD ¶ 173 (Oct. 3, 2003). In Scot, the GAO explained that

> [t]he purpose of the qualification requirements system is to allow the efficient procurement of items that require substantial testing to demonstrate compliance with specification requirements. The

> procurement of qualified products is a two-step process in which (1) a firm's products or services are tested for compliance with the specifications and, if found in compliance, are included on the appropriate list, and (2) products on the list may then be procured. The system is intended to be used prior to, **and independent of**, the specific procurement action.

Id. (emphasis added).

In W.G. Yates, the Federal Circuit examined the difference between a qualification requirement and a specification. 192 F.3d at 993-94. Unlike qualification requirements, the Federal Circuit found that specifications are "the requirements of the particular project for which the bids are sought, such as design requirements, functional requirements, or performance requirements." W.G.Yates, 192 F.3d at 994; see also 10 U.S.C. § 2305(a)(1)(C). "The specifications for [a] project would include the size of the doors, structural steel requirements, **ability to withstand wind loads, and the like**." Id. (Emphasis added). The Federal Circuit concluded that "qualification requirements, on the other hand, are activities which establish the experience and abilities of the bidder to assure the government that the bidder has the ability to carry out and complete the contract." Id. In W.G. Yates, the agency included a pre-bid qualification requirement that potential bidders have successfully completed other,

similar hanger door projects. 192 F.3d at 989. The Federal Circuit held that this was a qualification requirement, not a specification, because it related to other projects. Id.

In this case, and, as previously discussed, the contracting officer determined that CAMSS's proposal was not technically acceptable because it did not meet the following salient characteristics:

> (12) One-piece liner system must have been tested and approved by the USAF in a U.S. Government Test Facility
>
> (18) 120V Receptacle lines with 3 molded tri-plex outlets
>
> (27) Shelter must have been successfully tested by an independent laboratory to withstand a[n] 80 MPH sustained wind load for at least 30 minutes with intermittent 100 mph wind gust (include final test report with bid)
>
> (28) Shelter must have been successfully tested by an independent laboratory to withstand a 15 pound per square foot snow load (include final test report with bid)

AR 11, 91.

CAMSS argues that salient characteristics (12), (27), and (28) were qualification requirements, which could not be enforced because the agency had not satisfied the preliminary procedures required by 10 U.S.C.

§ 2319. Contrary to CAMSS's argument, the requirements that the product withstand a certain wind load, withstand a certain snow load and be an approved one-piece pull over liner system were not qualification requirements, but were specifications, which had to be met to be considered an "or equal" product. Indeed, in W.G. Yates, the Federal Circuit found that the ability to withstand wind loads, or the like (i.e., snow loads), and other design, functional, or performance characteristics are specifications, not qualifications requirements. 192 F.3d at 994.

The solicitation in this case did not have any salient characteristics to establish the ability or experience of the bidder to successfully complete the contract. See W.G. Yates, 192 F.3d at 994. Moreover, the challenged salient characteristics were neither "systemized quality assurance demonstrations on a continuing basis" nor part of a system that is used "independent of [a] specific procurement action." Rather, they were individual specifications for one solicitation, a procedure for which qualification requirements were not intended to apply. Aydin, B-224185 (Feb. 10, 1987), 87-1 CPD ¶ 141. Therefore, the solicitation did not contain any qualification requirements that are subject to 10 U.S.C. § 2319 and its accompanying regulations. See 10 U.S.C. § 2305; 10 U.S.C.

§ 2319; W.G. Yates, 192 F.3d at 993-94. The agency's actions did not violate any applicable statutes or regulations, and judgment upon the administrative record should be entered for the United States as a matter of law.

B. Even If The Solicitation Contained Qualification Requirements, The Air Force Did Not Violate Any Applicable Statutes Or Regulations

CAMSS argues that the Air Force violated 10 U.S.C. § 2319(c)(3) when it rejected CAMSS proposal for failing to meet alleged "qualification requirements." Compl. 10-12. Even if the solicitation contained qualification requirements, as CAMSS claims, the Government's actions did not violate 10 U.S.C. § 2319 or its related regulations.

The plain language of the 10 U.S.C. § 2319 prohibits an agency from denying an offeror the "opportunity to submit and have considered an offer" solely because the offeror fails to meet a qualification requirement subject to preliminary procedures if "the potential offeror can demonstrate to the satisfaction of the contracting officer . . . that the potential offeror or its product meets the standards established for qualification or can meet such standards . . . ." In this case, the Air Force did not deny CAMSS the opportunity to submit and have its offer considered. AR 13, 83, 91, 93.

CAMSS submitted an offer, and the contracting officer reviewed that offer and determined that CAMSS did not demonstrate that its proposed product met four of the salient characteristics. Id.

In its offer, CAMSS represented that its proposed product was "[e]ngineered to withstand 80 mph sustained wind load for at least 30 minutes, with 100 mph gusts" and "is [e]ngineered to withstand a 15 psf snow load." AR 14. However, the only documentation that CAMSS submitted with its proposal to support these statements was a technical memorandum that reported the findings of hot and cold weather climate testing of the proposed shelter, and a Contractor Performance Assessment Report on a 10-year contract for shelters between CAMSS and the Air Force. AR 28-54. A review of the technical memorandum and performance report contain no support for CAMSS's assertion that its proposed shelter can withstand any amount of wind or snow. Id. To this day, CAMSS has provided no support, in the form of test reports or other documentation, for its statements that its proposed shelter can withstand the required snow and wind load. Evan M. Bahe, the marketing manager for CAMSS, stated in an affidavit filed in the GAO proceedings, that:

> CAMSS Shelters as well as our many competitors offer numerous sizes of shelters often built to the

> exact dimensions required by the customer. Because of the high cost of testing, shelter designs are tested with regard to wind load, snow load, and other environmental factors and those test results are extrapolated, utilizing standard engineering practices for shelters within a particular design group.

AR 220. However, CAMSS did not submit any test results for wind or snow load for any of its shelters in any design group, nor did CAMSS submit any affidavit by Mr. Bahe or anyone else affirming that the proposed shelters were part of a design group that had been tested for wind and snow load. See generally AR 13-55. Instead, all that CAMSS submitted with its proposal in support of its representation that its proposed product met the salient characteristics for snow and wind load were test results for hot and cold temperatures that mentioned nothing about snow or wind loads. AR 31-54.

Accordingly, the contracting officer did not act arbitrarily or capriciously in concluding that CAMSS's proposed shelter neither met nor could meet the salient characteristics for wind and snow load. See 10 U.S.C. § 2319(c)(3). The Government's actions did not violate 10 U.S.C. § 2319 or its related regulations, assuming they are even applicable at all.

Moreover, this is not a situation in which the purpose of 10 U.S.C.

§ 2319 would be frustrated. The purpose of 10 U.S.C. § 2319 is to prevent the restriction of competition, and, as it is titled, the "Encouragement of New Competitors." Here, CAMSS is not a new competitor to the business of providing shelters or participating in Government contracts. As stated in its complaint, "[c]urrently, there are over 1 million square feet of CAMSS shelters in use in Iraq by all branches of the military, including the Air Force." Compl. 2. Indeed, attached to its proposal in this case, CAMSS included a copy of a 2006 Contract Performance Assessment Report in a $139 million, ten-year contract awarded by the Air Force to CAMSS to provide shelters as part of a different solicitation with different specifications. AR 28-30. In comparison, the contract in this case was awarded to ASI for approximately $183,000. AR 88.

C. The Air Force Properly Awarded The Contract To ASI, Who Offered The Brand Name Product

CAMSS argues that ASI did not offer the brand-name product, but offered an "or equal" product that should have been compared against the solicitation's salient characteristics. Compl. 13-15. In making this argument, CAMSS seeks to take advantage of a small, obvious typographical error in the solicitation, which did not prejudice CAMSS.

On May 24, 2007, the Air Force issued an original GSA Solicitation for brand name or equal "Alaska Extreme 1836 Shelter (Tan) Including Electrical/Lighting Kits, Plenum, One Piece Liner, Vinyl Floor and Soft Bag Carrying System," Part Number AK-18EXT-26-2. AR 1. Only one offeror, ASI, responded, but its offer was non-responsive because its quote was not from the GSA schedule. AR 69. The Air Force withdrew the solicitation and decided to re-issue the solicitation as an open-market, brand-name or equal procurement. AR 9. The Air Force could have issued the solicitation brand-name only, but did not to encourage competition. AR 225. On June 22, 2007, the solicitation was reissued as brand-name or equal and again listed as the brand name, "Alaska Extreme 1836 Shelter (Tan) Including Electrical/Lighting Kits, Plenum, One Piece Liner, Vinyl Floor and Soft Bag Carrying System," and identified ASI's part number as AK-18EXT-26-2. AR 9.

The GSA solicitation and the open market solicitation contained inadvertent typographical errors in the identification of the brand name product. AR 254. Instead of "Alaska Extreme 1836 Shelter," the solicitations should have stated "Alaska Extreme 1826 Shelter." Id. The number reflects the dimensions of the shelter. AR 330-31. For example,

an Alaska Extreme 1826 Shelter has 18 x 26 dimensions. Id. Although the solicitation stated an "Alaska Extreme 1836 Shelter," the salient characteristics in the solicitation listed the dimensions of the shelter to be 18 x 26. Moreover, ASI has never made an Alaska Extreme 1836 Shelter. AR 331. That product does not exist. Id. The part number also contained a typographical error. AR 1, 9. Instead of ASI part number AK-18EXT-26-2, the part number should have been AK-1826-XTR-2. There is no ASI part number AK-18EXT-26-2. Id.

Neither CAMSS nor ASI raised these patent errors prior to the close of bidding, and it can be assumed that both were aware of the obvious typographical errors and that the brand-name product sought in the solicitation was the Alaska Extreme 1826 Shelter. AR 134, 135-36. CAMSS and ASI are competitors who routinely compete for these contracts. AR 220. CAMSS has admitted that it is extremely familiar with ASI's products. Id. Mr. Bahe, CAMSS's marketing manager "responsible for responding to solicitations from both commercial and government customers regarding shelters," stated in his affidavit that

> as part of [his] duties at CAMSS Shelters, [he is] not only responsible for being knowledgeable about the products offered by CAMSS Shelters, but also the products offered by [CAMSS's] many

> competitors, including, but not limited to, shelters offered by Alaska Structures. That responsibility includes, but is not limited to, being knowledgeable about shelter design features and user requirements.

AR 274. Mr. Bahe further acknowledged in another affidavit that he is "familiar with the structure of the Alaska Extreme 1826 Shelter offered by Alaska Structures." AR 220. Moreover, the GAO found that "CAMSS has not suggested that it was misled by [these typographical] errors." AR 134. Therefore, CAMSS was or should have been aware that an Alaska Extreme 1836 Shelter did not exist and that, based upon the listed 18 x 26 dimensions and the other salient characteristics included in the solicitation, the brand name should have read "Alaska Extreme 18<u>2</u>6 Shelter."

Even if this Court were to accept CAMSS's arguments that ASI did not offer the brand name product, the outcome of the solicitation would be the same because ASI's proposed product meets all of the salient characteristics in the solicitation to be an "or equal" product. CAMSS argues that ASI's proposal did not meet the salient characteristics because it did not offer a shelter with four doors or a ten-year warranty. Compl. 14-15. However, the salient characteristics did not include four doors or a ten-year warranty, as CAMSS claims. Instead, the plain language of the

solicitation lists as salient characteristics (11) and (25), respectively, that the shelter have "two side entries," not four, and that the shelter have a "minimum usable life expectancy [of] 10 years with constant use." AR 10-11. The solicitation does not require a 10-year warranty as CAMSS alleges. AR 257. Moreover, although CAMSS claims that they interpret "two side entries" to mean two additional entries on the longer sides of the shelter, for a total of four entries, CAMSS, like ASI, proposed a shelter with two entries. AR 254.

D. Even If The Air Force's Actions Were Contrary To Statutes And Regulations, As CAMSS Alleges, CAMSS's Inability To Show Prejudice As a Result Of The Alleged Errors Is Fatal To Its Protest

"[N]ot every violation of statute or regulation requires rejection of the agency's action." Ravens Group, 78 Fed. Cl. at 396 (2007). Thus, a bid protest proceeds in two steps. Chant Engineering Co., Inc. v. United States, 75 Fed. Cl. 62, 72-73 (2007). First, the Court must determine whether the Government acted without a rational basis or contrary to law. Id. Second, if the Court finds that the Government's action was without a rational basis or contrary to law, it must determine whether the protestor was prejudiced by that conduct. Id.; see also Ravens Group, 78 Fed. Cl. at

396 ("[This] court will not overturn a contract award based on de minimis errors made during the procurement process.").

In this case, even if CAMSS were to satisfy the first step of demonstrating that the Government acted without a rational basis or contrary to law, it cannot satisfy the second step of demonstrating that it was prejudiced by the alleged errors. CAMSS' did not offer a shelter with 120-volt receptacle lines, an important salient characteristic. AR 11, 17. Moreover, CAMSS's proposal failed to satisfy the contracting officer that its proposed product could meet the salient characteristics for maximum wind and snow loads. See Am. Renovation, 45 Fed. Cl. at 49 (1999) (holding that a contracting officer's decision to reject materials as not compliant with specifications will be upheld unless it was arbitrary and capricious). Accordingly, CAMSS was not prejudiced by the alleged errors, and it cannot demonstrate that it had any chance of receiving the contract despite the alleged errors. See Orca Northwest Real Estate Servs. v. United States, 65 Fed. Cl. 1,12-13 (2005) (dismissing protest where material defects were found in agency's decision, but those defects did not ultimately affect the outcome of the solicitation). Therefore, judgment on

the administrative record should be entered for the United States as a matter of law.

V. CAMSS's Challenges To The Terms Of The Solicitation Are Untimely

CAMSS's protest is entirely comprised of alleged patent errors within the terms of the solicitation. In Blue & Goldfleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007), the Federal Circuit held, as a matter of first impression, that a party who has the opportunity to object to the terms of a Government solicitation containing a patent error and fails to do so prior to the close of bidding waives its ability to raise the same objection subsequently in a bid protest before this Court.

In this case, CAMSS had the opportunity to object to the salient characteristics and the typographical error in the brand name prior to the closing of bids, but failed to do. AR 135. Mr. Bahe, the authority in charge of preparing CAMSS's proposal, represented that it was a part of his job to be knowledgeable about ASI's shelters. Therefore, Mr. Bahe should have promptly noticed the typographical error in the brand name, given that an Alaska Extreme 1836 Shelter did not exist, and that the salient characteristics called for a shelter with dimensions of 18 x 26, the exact dimensions of an Alaska Extreme 1826 Shelter. Despite this knowledge,

CAMSS never raised the typographical error until after bidding closed. CAMSS also never raised the alleged error that the salient characteristics included qualification requirements subject to 10 U.S.C. § 2319. Because CAMSS failed to raise these challenges to the terms of the solicitation prior to the close of bidding, its protest is untimely and should be dismissed. See Blue & Gold, 492 F.3d at 1313.

VI. CAMSS Fails To Satisfy Its Heavy Burden To Obtain An Injunction

Injunctive relief for a disappointed bidder is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, 719 F.2d at 1581). To obtain a preliminary injunction, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief by clear and convincing evidence based upon the following factors: (1) a likelihood of success on the merits; (2) that the plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to the plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000); PGBA, L.L.C. v. United States, 57 Fed. Cl. 655, 657 (2003). But see Bannum, Inc. v. United

States, 60 Fed. Cl. 718, 723-24 (2004) (applying a preponderance of the evidence standard). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). In this case, CAMSS does not satisfy any of the four factors considered for a preliminary injunction, and its motion for a preliminary injunction should be denied.

A. CAMSS Is Not Likely To Succeed Upon The Merits

As explained in this brief, CAMSS is not likely to succeed upon the merits of this protest. As previously discussed, the contract has been substantially completed, and therefore, its request that the contract be enjoined from further performance is now moot. Even if the issue were not moot, CAMSS lacks standing to bring this protest because it cannot show that it was prejudiced by the alleged errors in the solicitation. Notwithstanding the alleged errors, CAMSS's proposal was unresponsive because it did not propose the 120 volt receptacle lines required by the solicitation. Therefore, CAMSS has no chance of receiving the contract despite the alleged errors.

Moreover, the solicitation did not contain qualification requirements as alleged by CAMSS, and, even if the solicitation had contained

qualification requirements, the agency's actions did not violated 10 U.S.C. § 2319 or its related regulations, 48 C.F.R. § 9.206-1 and 48 C.F.R. § 9.202. See supra Parts IV.A-B. Finally, contrary to CAMSS allegations, ASI proposed the brand name product, which met all of the 28 salient characteristics in the solicitation. See supra Parts IV.C-D. Accordingly, CAMSS cannot demonstrate a likelihood that it will succeed upon the merits in this case.

### B. CAMSS Will Not Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted

The contract in this case has been substantially performed. Limbrick Decl. 6. All nine shelters have been delivered and accepted, and they are currently being used by the Government. Id. If a preliminary injunction is not granted, CAMSS will be in exactly the same position that it would have enjoyed if a preliminary injunction were granted. At this point, there is no performance of the contract left to be enjoined, and the contract, which is substantially complete, cannot be re-solicited. The only remedy available to CAMSS, if its protest is successful, is recovery of its directly incurred costs in preparing its proposal.

CAMSS argues that it will be irreparably harmed if an injunction is not granted because it will have been denied the opportunity to secure the

contract and the resulting profits. Pl. Memo 18. CAMSS, however, had an opportunity to secure the contract here, and it wasted that opportunity by failing to offer a product that met the salient characteristics required by the solicitation.

Moreover, "[n]ormally, an injury is not considered 'irreparable' if the only injury alleged is monetary loss." Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188, 193 (2005).

> In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief.

San Diego Beverage & Kup v. United States, 997 F.Supp. 1343, 1347 (S.D. Cal. 1998). Further, as stated above, an injunction will not prevent CAMSS from its alleged irreparable harm. The contract has been substantially performed, and CAMSS can not secure the contract and its profits whether an injunction is granted or not.

### C. The Harm To The Government Outweighs Any Potential Harm To CAMSS If An Injunction Is Issued

The harm to the Government outweighs any potential harm to CAMSS if an injunction is issued. The shelters have already been

delivered and accepted by the Government, and the Government is currently using the shelters in support of the war effort. Limbrick Decl. 6. As of the date of this brief, the only performance remaining on the contract is payment for the shelters that the Government accepted and is using. The Government is contractually obligated to pay for those shelters, and any delay in payment could result in penalties upon the Government. In comparison, any potential harm to CAMSS will exist whether the injunction is issued. CAMSS's only available remedy at this point, if it is successful in its protest, is the award of its directly incurred costs in preparing its bid.

Moreover, when balancing the respective harms that can flow from the grant of, or failure to grant, an injunction, the Court may take into account not only the potential harm to CAMSS and to the Government, but also potential harm to third parties, like ASI. Chapman, 67 Fed. Cl. at 193 (citing PGBA, 389 F.3d at 1230). If an injunction were issued, ASI would not be paid for shelters for which it has already incurred expenses in building and delivering. The balance of harms, in this case, favors the Government.

D. <u>A Preliminary Injunction Would Not Be In The Public's Interest</u>

Despite CAMSS's contrary assertions, the public's faith in the procurement system would be maintained even if this Court decided the merits of this case without an injunction. <u>See</u> Pl. Memo 18. However, a preliminary injunction staying the contract would not serve the public interest. It is in the interests of the public that our military have the resources and equipment necessary to successfully complete its mission to defend and protect the United States. The shelters in this case are currently being used by military units "that provide direct combat support and are subject to be deployed within 24 hours of receiving notice," and by a military unit "that trains combat troops at Fort Dix, New Jersey. Limbrick Decl. 6. Moreover, enjoining payment for the shelters would result in penalties for a late payment. This also would not be in the public's interest as those additional fees would come from a public treasury. Therefore, CAMSS's request for a preliminary injunction should be denied because it would definitely not serve the public interest.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's motion for a preliminary injunction and grant our motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3689
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Christy J. Kisner, Capt., USAF
Department of the Air Force
1501 Wilson Blvd.
Arlington, VA 22209

November 9, 2007