IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC. d/b/a CAMSS SHELTERS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>ALASKA STRUCTURES, INC.,<br><br>Intervenor. | No. 07-740C |

DECLARATION OF DAVID LIMBRICK

I, David Limbrick, hereby declare as follows:

1. I currently work as a contract specialist for the United States Air Force, Air Mobility Command ("AMC") at Scott AFB, Illinois. I have held this position since 2000.

2. I have been employed by the United States government for over thirty years and for the Air Force since 1999.

3. Throughout 2007, I worked as a contracting officer for AMC, Directorate of Installations and Mission Support, Contracting Division, Specialized Contracting Branch ("AMC Specialized Contracting Branch").

4. My duties as a contracting officer included assisting government personnel who have a need for goods or services in developing their contract requirements, soliciting offers from industry through the Federal Business Opportunities (FedBizOpps) system, evaluating offers received, and awarding purchase order contracts.

5. On 22 Jun 07, a combined synopsis/solicitation to award a firm-fixed price contract for nine Alaska Extreme 1836 Shelters (Tan) including electrical/lighting kits, plenum, one piece liner, part number AK-18EXT-26-2, under FAR Parts 12 and 13, was posted to FedBizOpps. The solicitation specified that the procurement would be a 100% Small Business Set-Aside open

market acquisition. The shelters were solicited as "Brand Name or Equal" with a detailed list of salient characteristics that must be met in order to accept an "or equal" product. The solicitation specified that when an "or equal" product was proposed, the offeror must submit documentation which demonstrates the item's compliance with the specifications and salient characteristics. The solicitation stated that it was the Government's intent to evaluate offers and award without discussions; however, the government reserved the right to hold discussions if necessary.

6. Two offers were received by the response due date; one from Alaska Industrial Resources, and one from California Industrial Facilities Resources, Inc. (dba CAMSS Shelters). In accordance with the solicitation, the contract award was to be made to the lowest priced, technically acceptable offeror that met all stated requirements. Alaska Industrial Resources proposed the brand name product in the amount of $183,015.00. The government's technical evaluation found their proposal to be compliant with the solicitation's stated requirements. CAMSS Shelters proposed an "or equal" product: a CAMSS18EX Expeditionary Shelter System with One-piece Liner System, in the total amount of $97, 410.99. The Government evaluated the item proposed by CAMSS Shelters and determined that it was technically unacceptable since it did not comply with all of the stated requirements in the solicitation. The government's technical evaluation noted four specific deficiencies that made the CAMSS Shelters proposal technically unacceptable:

(1) There was no final test report from an independent laboratory included with the proposal verifying that the shelter could withstand an 80 mph sustained wind load for at least 30 minutes, with 100 mph gusts.

(2) There was no final test report from an independent laboratory included with the proposal verifying the shelter could withstand a 15 pounds per square foot snow load.

(3) There was no test report from a U.S. government test facility included with the proposal indicating Air Force approval of the ONE-PIECE PULL OVER LINER SYSTEM

(4) CAMSS Shelters proposed to use two (2) quick-connect 110volt/20amp outlet strings rather than the required 120volt receptacle lines with 3 molded tri-plex outlets.

Accordingly, contract award was made to the only technically acceptable offeror, Alaska Industrial Resources, on 2 July 2007.

7. On 11 Jul 07, via telefax, CAMSS Shelters requested a debriefing on the award decision of solicitation FA4452-07-Q-A055. On that same day, via email, CAMSS Shelters requested the following information about the award:

- When was the award made?
- Who was awarded the contract?
- Why did they get selected?
- What was the winning bid?

8. Upon receipt of these requests, the AMC Specialized Contracting Branch prepared an unsuccessful offeror letter for CAMSS Shelters. The unsuccessful offeror letter was sent to CAMSS Shelters on 12 Jul 07. The letter informed CAMSS Shelters of the name of the winning vendor and the dollar amount of the contract award. It also pointed out the specific areas of CAMSS Shelter's proposal that were determined to be technically unacceptable. Although CAMSS Shelters requested a debriefing, the Contracting Officer made a determination to continue with the preparation and submission of the unsuccessful offeror letter, which still offered CAMSS Shelters an opportunity for a debriefing should that information not satisfy its concerns. The letter specifically cited FAR Part 15.506 which afforded CAMSS Shelters three days to request a post-award debriefing. The letter also stated what information the Government could release in accordance with regulation.

9. On 12 Jul 07, the same day the government mailed the unsuccessful offeror letter, CAMSS Shelters sent the AMC Specialized Contracting Branch a courtesy copy of the protest letter that they submitted to the General Accounting Office (GAO). On 13 Jul 07, CAMSS Shelters sent the AMC Specialized Contracting Branch a courtesy copy of an amended protest letter that was also submitted to GAO. That same day, 13 Jul 07, the Contracting Officer contacted CAMSS Shelters and offered to provide a debriefing. CAMSS Shelters accepted and stated since CAMSS Shelters is located in Washington, a teleconference on 16 Jul 07 was acceptable for the debriefing.

10. On 16 Jul 07, at 1415, the Government held a teleconference with CAMSS Shelters to address the technical inadequacies of its proposal. CAMSS Shelters was informed that it did not provide test reports for the snow and wind durability testing as required by the solicitation and that failure to conduct such tests of these shelters could pose a safety risk to military personnel in the field. CAMSS Shelters was in agreement that they did not include the required test results as part of their proposal. CAMSS Shelters stated that they felt the Government's requirement for every shelter to be tested was too stringent and that the government had not acted in accordance with FAR 9.2. After the technical discussion, all parties agreed that CAMSS Shelters did not meet the salient characteristics as specified in the solicitation. Additionally, AMC Specialized Contracting Branch informed CAMSS Shelters that a protest regarding requirements of FAR 9.2 was untimely since protests based on alleged defects in a solicitation must be filed before the closing date for receipt of proposals. Therefore, AMC Specialized Contracting Branch asked CAMSS Shelters if they intended to pursue or withdraw the protest. CAMSS Shelters said they would speak with their legal staff and agreed to let the AMC Specialized Contracting Branch know what the decision would be via email.

11. On 17 Jul 07, CAMSS Shelters requested that the AMC Specialized Contracting Branch provide the regulation(s) that required the Government to ensure products had approved testing before acceptance. On 18 Jul 07, the AMC Specialized Contracting Branch sent CAMSS Shelters the Government's response.

12. On 18 Jul 07, the AMC Specialized Contracting Branch received notification of the official GAO protest. Alaska Industrial Resources was provided a redacted copy of the protest letter.

13. On 19 Jul 07, a modification issuing a "Stop Work" order was sent to Alaska Industrial Resources.

14. On 16 Aug 07 and 21 Aug 07, Kirkpatrick & Lockhard Preston Gates Ellis LLP (K&L Gates), CAMMS Shelters attorney's, filed requests for additional documents to include Alaskan Structures proposal with attachments, Market Research Memorandum, DD Form 2579-Small Business Coordination Record, and Alaskan Structures Shelter Test Report.

15. On 27 Aug 07, K&L Gates filed a supplemental protest alleging that Alaska Structures failed to submit a compliant offer since:

a. Alaska Structures failed to identify how it's "or equal" product would meet the salient characteristics listed in the solicitation. CAMSS' counsel argued that Alaska Structures actually proposed an "or equal" product rather than the brand name product since the part number it proposed did not match the part number specified in the solicitation. The AMC Contracting Branch responded that Alaska Structures had, in fact, proposed the Brand Name product: Part #AK-1826XTR-2. The Synopsis/Solicitation identified the part number as: Part # AK-18EXT-26-2. The technical evaluation found the product proposed by Alaska Structures to be the brand name product specified in the solicitation; the part number had been incorrectly entered into the combined synopsis/solicitation. Therefore, Alaska Structures quote was deemed technically acceptable.

b. The actual shelter offered by Alaska Structures does not meet the salient characteristics with regard to two side entries. The AMC Specialized Contracting Branch replied that the requirement was to have two doors, not two doors on one side and that the technical evaluation found Alaska Structures quote to be acceptable in accordance with the terms of the synopsis/solicitation – Brand Name or Equal. As indicated above, Alaska Structures proposed to provide the brand name product.

c. Alaska Shelter's offer varied a material term of the solicitation - warranty. The AMC Specialized Contracting Branch's response was that the synopsis/solicitation states, "MINIMUM USABLE LIFE EXPECTANCY 10 YEARS WITH CONSTANT USE AND A 20 YEAR SHELF LIFE." The Government did not require a specific warranty to be included with the vendor quote.

d. Alaska Shelter's offer varied a material term of the solicitation - delivery date. The AMC Specialized Contracting Branch's response was the synopsis/solicitation specified, "The required date of delivery is no later than 31 Aug 07." Alaska Structures quoted 30 days ARO (after receipt of order) on a quote that they submitted on 25 Jun 07. The Government's solicitation indicated "no later than 31 Aug 07" and accepted Alaska Structures quoted date because it was known award would occur in early July.

e. CAMSS Shelters was prejudiced by the contracting agency's acceptance of a non-compliant offer. The AMC Specialized Contracting Branch denied that it had accepted a non-compliant offer. The Government accepted Alaska Structures quoted Brand Name product. The

AMC Specialized Contracting Branch did not accept CAMSS Shelters quote based on an unacceptable technical evaluation.

16. In the 27 Aug 07 Supplemental Protest, it was also alleged that Air Force officials engaged in improper conduct during the course of this procurement by not treating the offerors equally, because:

a. During an initial GSA Request for Quote, Ms. Brown for the Air Force repeatedly contacted Alaska Structures after the Request for Quote was issued and prior to the due date for offers to discuss Alaska Structures' offer. The AMC Specialized Contracting Branch responded that these "discussions" did not specifically relate to this synopsis/solicitation which is being protested. Furthermore, all such contacts with this vendor were made prior to the Government posting this synopsis/solicitation on FedBizOpps.

b. The initial Request for Quote did not have salient characteristics listed that would actually allow other companies to submit quotes thereby giving every indication that, while the Air Force wanted to create the appearance of competition, they were not, in fact, seeking competition. The AMC Specialized Contracting Branch responded that this statement does not refer to the synopsis/solicitation/award, which is what is under protest. The synopsis/solicitation, which was posted on FedBizOpps, did include all required salient characteristics.

17. On 12 Sep 07, after it was made known that the funds supporting this acquisition were scheduled to expire at the end of the fiscal year (i.e., 30 Sep 07) and could not be preserved, the AMC Specialized Contracting Branch considered applying for an override of the GAO stay of performance from the Head of the Contracting Activity. The Government ultimately decided not to pursue this avenue and instead await the final decision from the GAO.

18. On 22 Oct 07, the AMC Specialized Contracting Branch received a call from Alaska Structures stating that the GAO protest had been denied and that it was ready to ship the nine Alaska Extreme Shelters. Alaska Structures was told that the stay could not be lifted until the Government received the official notice that the protest had been denied from the GAO. The AMC Specialized Contracting Branch also received notification from K&L Gates that CAMMS Shelters intended to file a protest with the United States Court of Federal Claims (USCOFC).

19. On 23 Oct 07, the AMC Specialized Contracting Branch received official notification that the GAO protest had been denied and that CAMMS Shelters was protesting to the USCOFC. The Government did not believe it was likely a temporary restraining order or preliminary injunction would be granted. Furthermore, the Government had an urgent requirement for these tents. As such, a modification was issued by the AMC Specialized Contracting Branch to lift the Stop Work order.

20. This requirement was originally funded with FY07 Transportation Working Capital Funds which, as mentioned above, expired on 30 Sep 07. As such, funding in the amount of $183,015.00 will have to be taken out of the FY08 budget vice the intended FY07 funds. This will cause shortfalls in other FY08 requirements since the requirement for these tents was not programmed in the FY08 budget.

21. On 26 Oct 07, the nine Alaska Extreme Shelters were received at McGuire AFB, New Jersey; Travis AFB, California; and Fort Dix, New Jersey. Six of these items were delivered to Expeditionary Mobility Task Force units that provide direct combat support and are subject to be deployed within 24 hours of receiving notification. Lack of these shelters affects the ability of these units to be fully prepared for deployment when requested. Three Alaska Extreme Shelters were sent to a unit that trains combat troops at the Air Force Expeditionary Center, Ft Dix, New Jersey. The Government was intending to use these shelters for the October "Red Flag" training event, but due to the GAO protest, they were neither delivered nor available for this event.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of November, 2007

David N. Limbrick

David N. Limbrick
Contracting Officer
HQ AMC Specialized Contracting Branch