IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | | |
|---|---|---|
| CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC. dba CAMSS SHELTERS, | ) | |
| Plaintiff, | ) | No. 07-740 (Judge Lawrence M. Baskir) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| ALASKA STRUCTURES, INC., | ) | |
| Intervenor. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Defendant, the United States, respectfully submits the following opposition to plaintiff's cross-motion for judgment upon the administrative record and reply to plaintiff's opposition to defendant's motion for judgment upon the administrative record.

## BACKGROUND

In our brief supporting our motion for judgment upon the administrative record, we demonstrated that this Court lacks subject matter jurisdiction to enjoin performance of the Government's contract with ASI or

to order a re-solicitation because the contract with ASI is substantially complete. Def. Br. 6. We further demonstrated that the plaintiff, California Industrial Facilities Resources, Inc. ("CAMSS"), does not have standing to bring this protest because CAMSS cannot establish more than a mere possibility that it would have received the contract but for the alleged errors in the procurement process. Id. at 8. Even if this Court were to find in favor of CAMSS in regards to all of its alleged errors, CAMSS's proposed product still failed to meet the solicitation's requirement that the product have 120V receptacle lines, which rendered CAMSS incapable of receiving the contract in this case. Id. at 27.

Moreover, as established in our brief supporting our motion, the decision to award the contract to ASI was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law. Id. at 14. The solicitation contained no qualification requirements, as CAMSS suggests, and even if the solicitation had contained such requirements, the Air Force's actions did not violate 10 U.S.C. § 2319 or any other applicable statute or regulation. Id. at 14-23. Moreover, even if the Air Force's actions were contrary to applicable statutes and regulations, CAMSS is unable to demonstrate that its proposal was prejudiced as a result of

CAMSS's alleged errors. Id. at 27. The Air Force properly awarded the contract to ASI, who offered the brand name product. Id. at 23.

In its cross-motion and opposition, CAMSS asserts illegalities in a different, earlier request for quotation ("RFQ"), which was eventually cancelled by the Air Force, and argues that ASI's assistance with the salient characteristics for the brand name product render the contract award void. Pl. Br. 3, 6, 20. CAMSS further argues that ASI did not offer the brand name product, that the solicitation contained improper qualification requirements, and that CAMSS's proposal offering a 110V receptacle met the 120V receptacle requirement because the two are, in CAMSS's view, essentially the same thing. Id. at 18-28. CAMSS asks the Court to void the Government's completed contract with ASI and for the award of bid and proposal costs. Id. at 29-30. As demonstrated below, CAMSS's arguments lack merit, and its cross-motion should be denied.

## ARGUMENT

### I. CAMSS Lacks Standing To Challenge A Different RFQ That Was Cancelled Prior To Award And For Which CAMSS Never Submitted A Bid

This protest concerns an Air Force solicitation for bids on nine shelters. Compl. 1. However, in its cross-motion, CAMSS also challenges another RFQ issued by the agency for seven shelters. Pl. Br. 2. CAMSS

claims that this RFQ contained no salient characteristics in violation of Federal acquisition regulations and that the Air Force only held discussions with the ASI and not with any of the other solicited offerors. Pl. Br. 3, 6. To the extent that CAMSS is challenging the May 24, 2007 RFQ, CAMSS's challenges should be dismissed for lack of standing.

Only one offeror, ASI, responded to the May 24, 2007 RFQ. AR 56. The Air Force eventually cancelled that RFQ prior to award. AR 9. CAMSS lacks standing to challenge the May 24, 2007 RFQ because it never responded to that solicitation. See Myers Investigative & Sec. Serv., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (holding that only actual or prospective bidders have standing to bring a bid protest). Moreover, there is no award resulting from that RFQ for the Court to set aside based upon any alleged procurement errors. Accordingly, CAMSS's claims challenging the May 24, 2007 RFQ should not be considered by this Court.

## II. There Are No Statutes Or Regulations Restricting The Air Force From Seeking Assistance From The Brand-Name Manufacturer In Establishing The Salient Characteristics For A Brand-Name Or Equal Solicitation

The solicitation in this case sought a brand name or equal product. AR 9. A solicitation for a brand name or equal product must include, "in

addition to the brand name, a general description of those salient physical, functional, or performance characteristics of the brand name item that an 'equal' item must meet to be acceptable for award." 48 C.F.R. § 11.104. In this case, soldiers in the field reported to the agency's contracting division that a need existed for additional Alaska Extreme 1826 shelters. AR 223, 245, 258. The agency contacted ASI, the manufacturer of the Alaska Extreme 1826 shelters, for assistance in developing the general description as required by 48 C.F.R. § 11.104. See AR 350.

CAMSS argues that ASI developed the salient characteristics for the solicitation, and that this renders the award to ASI arbitrary, capricious and contrary to the law. Pl. Br. 20. However, there is no statute, regulation or caselaw, and CAMSS identifies none, that restricts the agency from contacting the manufacturer of a brand-name product for assistance in developing the salient characteristics that would make another manufacturer's product equal to the brand-name product.

Moreover, contrary to CAMSS's assertions, the Government has not misrepresented the establishment of the salient characteristics. See Pl. Br. 8-9. The specifications came from users in the field, who reported that there was a shortfall of Alaska Extreme 1826 shelters and that these shelters were desired for their ability to withstand actual weather

conditions. AR 223, 245, 258. Based upon this feedback, the agency began putting together the solicitation for the shelters. Id. Accordingly, CAMSS's argument that the award should be set aside because ASI assisted with the description of its brand name product is unsupported by the law.

## III. Contrary To CAMSS Assertions, ASI Offered The Brand Name Product

CAMSS argues that ASI failed to offer the brand name product because ASI offered an Alaska Extreme 1836 shelter when the solicitation called for a brand name Alaska Extreme 1826 shelter. Pl. Br. 26. Moreover, CAMSS argues that ASI's proposed product did not meet the salient characteristics to qualify as an "or equal" product. Id.

First, as explained in our initial brief, the solicitation contained a typographical error in the brand name. Def. Br. 23-27. Instead of listing an Alaska Extreme 1826 shelter, the solicitation stated an Alaska Extreme 1836 shelter. AR 9, 254. However, there is no such thing as an Alaska Extreme 1836 shelter, and a review of the dimensions listed in the salient characteristics shows that the brand name sought was an 18 x 26 Alaska Extreme 1826 shelter. AR 330-31. This typographical error did not prejudice any of the offerors, and CAMSS has never asserted that it was

misled by the error. Indeed, CAMSS has admitted that it is extremely familiar with ASI's products. AR 220. Mr. Bahe, CAMSS's marketing manager "responsible for responding to solicitations from both commercial and government customers regarding shelters," stated in his affidavit that it is a part of his duty to be familiar with ASI's products. AR 274.

Second, even if ASI had not offered the brand name product, ASI's proposed shelter met all of the salient characteristics identified in the solicitation. Contrary to CAMSS's assertions, the solicitation did not require the shelter to have four entries or a ten-year warranty. AR 9. Instead, the plain language of the solicitation lists as salient characteristics (11) and (25), respectively, that the shelter have "two side entries," not four, and that the shelter have a "minimum usable life expectancy [of] 10 years with constant use." AR 10-11. Accordingly, CAMSS's arguments should be rejected because ASI offered the brand name product, and, even if ASI had offered an "or equal" product, ASI's proposed shelter met all of the salient characteristics identified in the solicitation.

## IV. The Solicitation Contained No Qualification Requirements, And 10 U.S.C. § 2319 Is Inapplicable

Contrary to CAMSS's claims, the solicitation contained no qualification requirements, which would render 10 U.S.C. § 2319 applicable

in this case. CAMSS argues that the salient characteristics requiring that the shelter withstand a certain wind load and snow load were created to prevent competition because only one company, ASI, could meet those standards. Pl. Br. 20, 25.

The solicitation in this case called for a brand name or equal product. AR 9. If, as CAMSS claims, no company other than ASI builds shelters to withstand the snow and wind loads required by the agency, then there is no “or equal” product, and the Air Force properly awarded the contract to ASI. Moreover, as explained in detail in our initial brief, the salient characteristics requiring a specific one-piece liner system, resistant to a specific snow load, and resistant to a specific wind load are not qualification requirements, but are physical, functional and performance characteristics of the brand name product. See Def. Br. 14-20; see also W.G. Yates & Sons Constr. Co., Inc. v. Caldera, 192 F.3d 987, 992-93 (Fed. Cir. 1999); Aydin Corp.-Reconsideration, B-224185, 87-1 CPD ¶ 141 (Feb. 10, 1987).

Even if this Court were to review these characteristics as qualification requirements, CAMSS fails to establish that the agency’s actions violated 10 U.S.C. § 2319. The plain language of the 10 U.S.C. § 2319 prohibits an agency from denying an offeror the "opportunity to submit and have

considered an offer" solely because the offeror fails to meet a qualification requirement subject to preliminary procedures if "the potential offeror can demonstrate to the satisfaction of the contracting officer . . . that the potential offeror or its product meets the standards established for qualification or can meet such standards . . . ." In this case, the Air Force did not deny CAMSS the opportunity to submit and have its offer considered. AR 13, 83, 91, 93. CAMSS submitted an offer, and the contracting officer reviewed that offer and determined that CAMSS did not demonstrate that its proposed product met four of the salient characteristics. Id. Specifically, CAMSS was not able to demonstrate that "its product meets the standards established for qualification or can meet such standards." See 10 U.S.C. § 2319. Indeed, the only documentation CAMSS submitted to support its assertion that its product could meet the wind and snow load requirements was a report regarding the ability of CAMSS's shelter to withstand hot and cold temperatures and a performance evaluation on a 10-year, $139 million contract CAMSS was awarded by the Air Force. AR 28-54.

Evan M. Bahe, the marketing manager for CAMSS, stated in an affidavit filed in the GAO proceedings, that:

> CAMSS Shelters as well as our many competitors offer numerous sizes of shelters often built to the exact dimensions required by the customer. Because of the high cost of testing, shelter designs are tested with regard to wind load, snow load, and other environmental factors and those test results are extrapolated, utilizing standard engineering practices for shelters within a particular design group.

AR 220. However, CAMSS did not submit any test results for wind or snow load for any of its shelters in any design group, nor did CAMSS submit any affidavit by Mr. Bahe or anyone else affirming that the proposed shelters were part of a design group that had been tested for wind and snow load. See generally AR 13-55. Accordingly, even if the solicitation contained qualification requirements, which it did not, CAMSS has not demonstrated that the agency's actions violated 10 U.S.C. § 2319 or any other applicable statute.

## V. CAMSS Does Not Deny That It Failed To Offer A Shelter With 120V Receptacle Lines, As Required By The Solicitation

Even without the procurement errors alleged by CAMSS, CAMSS's proposed shelter still failed to meet an important salient characteristic required by the solicitation. The solicitation required a shelter with 120V receptacle lines, but CAMSS's proposal offered a shelter with 110V receptacle lines. AR 11, 17. In our brief supporting our motion for

judgment upon the administrative record, we demonstrated the agency's reasons for the 120V requirement and the concern for "wet stacking," a phenomenon that can occur when incorrect voltages are used. Def. Br. 11-12. In its cross-motion and opposition, CAMSS argues that 110V receptacle lines are essentially the same thing as 120V receptacle lines and that if the Air Force disagreed, the Air Force should have entered into discussions with CAMSS to argue this difference of opinion. Pl. Br. 19, 20.

It is well-established that the Government has no obligation to enter into discussions with offerors if the solicitation states, as it did here, that the agency plans to evaluate proposals and award the contract without discussions. See FAR 15.306(a)(3), AR 11; see also DynCorp Intern. LLC v.United States, 76 Fed. Cl. 528, 539 (2007) ("It is well-established that when offerors are on notice that award may be made without discussions, the [G]overnment is not required, as a general rule, to hold discussions before award.") Moreover, the Air Force did not need to seek a clarification regarding whether a 110V receptacle line is the same as a 120V receptacle line because the contracting officer believed the two are different. According to the contracting officer, Mr. Limbrick, any voltage other than 120 volt "would create a safety hazard." AR 258; see also Am. Renovation & Construction Co. v. United States, 45 Fed. Cl. 44, 49 (1999)

("A Contracting Officer's decision to reject materials as not compliant with specifications will be upheld unless it was arbitrary and capricious. . . . Procurement officials are familiar with the particular conditions under which equipment has to be used and are in the best position to know the government's actual needs.").

Regardless of what CAMSS considers to be "similar enough," the Government has the right to insist upon compliance with specifications. See Blake Constr. Co. v. United States, 28 Fed. Cl. 672, 688 (1993). Accordingly, CAMSS's proposal failed to meet an important requirement of the solicitation and was properly rejected by the contracting officer.

VI. CAMSS's Relief Is Limited To Bid And Proposal Costs

CAMSS asserts that it is within this Court's power to declare the Government's substantially completed contract with ASI *void ab initio* and relies upon three cases in support of this proposition: John Reiner & Company v. United States, 325 F.2d 438 (Ct. Cl. 1963); United States v. Amdahl Corporation, 786 F.2d 387 (Fed. Cir. 1986); and Total Medical Management, Inc. v. United States, 104 F.3d 1314 (Fed. Cir. 1997). A closer reading of these cases, however, reveals that this Court does not have the power to declare the contract void because the goods have been delivered by ASI and accepted by the Government.

In Amdahl, the United States Court of Appeals for the Federal Circuit, reviewed a decision by the General Services Board of Contract Appeals ("GSBCA") that a government contract was *void ab initio* where a payment term in the contract was in violation of a statutory limitation. 786 F.2d at 391-92. The Federal Circuit reversed the GSBCA's finding that the goods had not yet been delivered and accepted by the Government, and held that with regard to those goods that had already been delivered and accepted by the Government, the Government was not required to return those goods and the contractor was not required to refund his payment for those goods. Id. at 398.

In this case, there is no illegal term in the contract between the Government and ASI, and, like Amdahl, the shelters have been delivered and accepted by the Government. Contrary to CAMSS's representation, the shelters are not sitting in storage, but are currently being used for the war effort. Pl. Br. 29; Def. Br. 7-8. CAMSS's complaint here is moot.

Similarly, the contract at issue in Total Medical Management was a contract for services that had not yet been completed and that contained an illegal contract term that violated regulatory restrictions. 104 F.3d at 1320-21. The Federal Circuit declared the contract void because it was

"plainly illegal." Id.[1] In this case, there are no illegal terms in the contract between ASI and the Government, and the contract is substantially complete. Reiner is also inapplicable to this case. 325 F.2d at 428. Reiner involved the Government's termination of a contract after an unsuccessful bidder prevailed in a protest before the GAO. Id. at 439-41. The contractor sued the Government for damages as a result of the termination. Id. The issue in the case was whether the contract award was illegal and void so that the plaintiff could not base a court action upon it. Id. Reiner is inapplicable to this case because, unlike the circumstances in this case, the contract in Reiner was not substantially completed. Id.

Accordingly, because the shelters in this case have been delivered and accepted by the Government and the contract contains no illegal terms that would render it "plainly illegal," this Court may not void the contract and order the Government to pull the shelters out of use and return them to ASI. The contract is substantially complete, and, at this point, the only

---

[1] The plaintiff in Total Medical was not a third party in a bid protest, but the contract holder seeking to improve the terms of its existing contract. It provides no support for CAMSS's ability, as a third party, to void another entity's contract.

remedy available to CAMSS if it is successful in this protest is award of its reasonable bid and proposal costs.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's cross-motion for judgment upon the administrative record and grant our motion for judgment upon the administrative record.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-3689
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Christy J. Kisner, Capt., USAF
Department of the Air Force
1501 Wilson Blvd.
Arlington, VA 22209

January 15, 2008